Wilbur P. Tyson, Petitioner *v.* Commonwealth of Pennsylvania, Workmen's Compensation Appeal Board, City of Chester and Pennsylvania Manufacturer's Association Insurance, Respondents.

Argued March 1, 1982, before Judges CRAIG, MACPHAIL and DOYLE, sitting as a panel of three.

*Randee B. Pavalow,* with him *Michael A. Paul, Richard, Brian, DiSanti & Hamilton,* for petitioner.

*Robert C. Geller, Jr.,* with him *Patrice Toland,* for respondents.

OPINION BY JUDGE DOYLE, June 18, 1982:

The issue presented in this appeal is whether the Workmen's Compensation Appeal Board properly applied the law concerning an employer's right to subrogate a claimant's workmen's compensation benefits when those benefits are awarded after the employer's payment of full salary pursuant to Section 1 of the Act of June 28, 1935, (Heart and Lung Act), P.L. 477, *as amended,* 53 P.S. §637. For the reasons which follow, we reverse the decision of the Workmen's Compensation Appeal Board (Board).

Wilbur P. Tyson (Claimant), a police officer for the City of Chester (Employer), received a gunshot wound of the chest while investigating a burglary on March 7, 1976. Following his injury, Claimant was absent from work for three separate periods. During each of these absences, the Claimant's method and amount of compensation varied. From March 7, 1976 to April 20, 1976, Claimant received both full pay from his Employer, under the Heart and Lung Act, and workmen's compensation benefits. The employer was subrogated to the payments for workmen's compensation. From February 21, 1977 to August 1, 1977, Claimant again received full pay from his employer under the Heart and Lung Act; however, no workmen's compensation benefits were paid for this period since Claimant had executed a final receipt. During

the third period of absence (January 27, 1978 to April 25, 1978), Employer refused to continue payment of Claimant's salary, contending that Claimant was no longer disabled as a result of the gunshot wound. Consequently, Claimant was compelled to use his accumulated sick leave. Claimant did not receive workmen's compensation benefits during this period of absence.

Following a hearing to determine Claimant's eligibility for workmen's compensation benefits for the latter two periods of absence, the referee found that Claimant's disability continued despite his execution of a final receipt. Having determined that all disability had not terminated at the time the receipt was signed, the referee set aside the final receipt and awarded compensation benefits for the second and third periods of absence. *American Chain & Cable Co. v. Workmen's Compensation Appeal Board*, 37 Pa. Commonwealth Ct. 574, 391 A.2d 50 (1978).

Pennsylvania Manufacturers Association Insurance Company, Employer's insurance carrier, appealed from the order of the referee. At this appeal, Employer sought to establish its right to subrogation. In a well reasoned opinion, the Board affirmed the order of the referee and, in addition, ordered the insurance carrier to pay Employer, as subrogee, the compensation benefits which were due to the Claimant. Subsequently, the insurance carrier petitioned, and was granted, a rehearing before the Board. At this hearing, the insurance carrier sought to recover a credit for payments made to the Claimant by Employer under the Heart and Lung Act. In its decision, the Board amended the referee's order by providing a credit to the insurance carrier for the salary paid by the Employer during the Claimant's second period of absence.

The application of a credit in favor of their insurance carrier, as a result of payments by the Employer

to the Claimant under the Heart and Lung Act, is inconsistent with the law. To determine that the insurance carrier was entitled to take a credit for compensation due during Claimant's second period of absence, the Board relied upon *Creighton v. Continental Roll & Steel Foundry Co.*, 155 Pa. Superior Ct. 165, 38 A.2d 337 (1944). *Creighton*, however, has no application to an employer's payments of salary pursuant to the Heart and Lung Act. When a Claimant's disability brings him within the purview of both the Heart and Lung Act and the Workmen's Compensation Act, the ultimate obligation for compensation lies under the Workmen's Compensation Act. *McIntosh v. Borough of Pleasant Hills*, 25 Pa. Commonwealth Ct. 311, 360 A.2d 273 (1976); *see also Commonwealth v. Oil City*, 15 Pa. Commonwealth Ct. 544, 328 A.2d 170 (1974). In *McIntosh*, this Court held that the provision of the Heart and Lung Act which establishes the employer's right to receive workmen's compensation for salary paid during incapacity,[1] is controlling under circumstances such as these herein. Accordingly, we reverse the Board's amendment of the referee's order. The Employer will be subrogated to the workmen's compensation benefits payable for the period of February 1, 1977 to August 1, 1977.

With regard to the Claimant's third period of absence, the Board did not allow any credit against workmen's compensation benefits for payment to the Claimant which represented accumulated sick leave. It has been held that "sick leave . . . is an incident or benefit provided under the work agreement and is an

[1] Section 1(a) of the Heart and Lung Act provides:
during the time salary for temporary incapacity shall be paid . . . by the . . . city . . . , any workmen's compensation, received or collected by any such employee for such period, shall be turned over . . . to such city . . . , and paid into the treasury thereof. . . .

entitlement like wages for services performed.''
*Temple v. Pennsylvania Department of Highways,* 445
Pa. 539, 542, 285 A.2d 137, 139 (1971). Thus, by apply-
ing the test set forth in *Steinle v. Workmen's Compen-
sation Appeal Board,* 38 Pa. Commonwealth Ct. 241,
393 A.2d 503 (1978),[2] the Board properly determined
that no credit was available for the period when claim-
ant used accumulated sick leave.

Finally, we reverse the Board's order which lim-
ited the award of counsel fees to the period January
27 to April 25, 1978. Since the efforts of claimant's
attorney were responsible for the creation of the work-
men's compensation fund for both periods of Febru-
ary 21 to August 1, 1977 and January 27 to April 25,
1978, the computation of counsel fees should be based
on both periods, not merely the latter.[3] Regarding the
period of Claimant's absence in 1977, Employer, as
subrogee, is properly required to contribute propor-
tionally to attorney's fees expended in producing the
fund. *International Paper Co. v. Workmen's Compen-
sation Appeal Board,* 55 Pa. Commonwealth Ct. 132,
423 A.2d 42 (1980).

Accordingly, we enter the following

ORDER

Now, June 18, 1982, the order of the Workmen's
Compensation Appeal Board, dated January 29, 1981

---

[2] "Thus, whether or not amounts paid by the employer may be
credited against the employer's workmen's compensation obligation
depends not upon whether the payments are categorized as a benefit
of a collective bargaining agreement, but rather whether the pay-
ments were made as wages for work performed or in relief of the
employee's incapacity to labor." *Steinle,* at 246, 393 A.2d at 506.

[3] It is clear that the Board's denial of counsel fees is based upon
the improper award of a credit to the workmen's compensation in-
surance carrier. That credit eliminated the fund from which coun-
sel fees had been awarded. As a result, the issue of counsel fees is
inextricably associated with the Employer's right to subrogation,
which establishes the fund from which counsel fees are awarded.

at No. A-77407, insofar as it amended the referee's award of compensation is reversed. The Pennsylvania Manufacturers Association Insurance Company (PMA) is ordered and directed to pay the City of Chester, as subrogee, of the Claimant, Wilbur P. Tyson, compensation at the rate of $173.86 per week from February 21, 1977 to August 1, 1977; and to pay to the Claimant compensation at the rate of $173.86 per week from January 27, 1978 to April 25, 1978.

It is further ordered that PMA pay Wilbur P. Tyson $30.00 as reimbursement for medical expenses.

Interest is assessed at the rate of ten percent (10%) of all compensation due.

It is further ordered that PMA pay directly to Wilbur P. Tyson's counsel, out of Wilbur P. Tyson's award, twenty percentum (20%) of each payment of payment of compensation due the City of Chester and pay directly to the City of Chester the balance of such compensation due Wilbur P. Tyson and pay directly lating attorney's fees shall include weekly benefits, interest and medical expenses.

It is further ordered that PMA pay directly to Wilbur P. Tyson's counsel, out of the City of Chester's award as subrogee, twenty percentum (20%) of each compensation. The award for the purposes of calcu- to Wilbur P. Tyson the balance of such compensation. The award for the purposes of calculating attorney's fees shall include weekly benefits, interest and medical expenses.

Judge MENCER did not participate in the decision of this case.

---

CONCURRING OPINION BY JUDGE MACPHAIL:

It is my understanding that the sole issue presented by this appeal is whether the Board erred when it failed to award counsel fees for the period from Feb-

ruary 21, 1977 to August 1, 1977. I agree with the majority that the Board did err in that regard. Once the Board determined that workmen's compensation benefits were payable for the period from February 21, 1977 to August 1, 1977, it follows that counsel fees should have been awarded for the same period of time, irrespective of the employer's subrogation rights or any right to credit or set-off of the insurance carrier. Believing that it is unnecessary for us to decide anything beyond that narrow issue, I concur in the result only.