838 A.2d 598

**CITY OF ERIE, Appellant**

v.

**WORKERS' COMPENSATION APPEAL BOARD (ANNUNZIATA), Appellee.**

Supreme Court of Pennsylvania.

Argued Sept. 8, 2003.

Decided Dec. 17, 2003.

596

Richard Edward Bordonaro, Erie, for City of Erie, Appellant.

Amber Marie Kenger, Mechanicburg, Richard C. Lengler, Harrisburg, for W.C.A.B., Appellee.

Charles D. Agresti, Erie, for Jeffrey Annunziata, Appellee.

Before: CAPPY, C.J., and CASTILLE, NIGRO, NEWMAN, SAYLOR, EAKIN and LAMB, JJ.

## OPINION

Justice NEWMAN.

We granted allocatur in this case to address whether a police officer who suffers an injury in the course of his duties, which is compensable pursuant to the statute commonly referred to as the Heart and Lung Act,[1] can collect and retain, in addition to Heart and Lung Act compensation, benefits pursuant to the Workers' Compensation Act[2] for the loss of earning power he suffered in concurrent, supplemental employment. The Commonwealth Court determined that Jeffrey Annunziata (Annunziata), the claimant in the present case, was entitled to receive and keep both Heart and Lung Act and workers' compensation benefits concurrently. For the reasons discussed herein, we affirm in part, reverse in part, and vacate in part the Order of the Commonwealth Court.

1. Act of June 28, 1935, P.L. 477, *as amended,* 53 P.S. §§ 637–638.

2. Act of June 2, 1915, P.L. 736, *as amended,* 77 P.S. §§ 1–1041.4, 2501–2626.

## FACTS AND PROCEDURAL HISTORY

Annunziata sustained a fracture of his right tibial plateau on April 22, 1998, when another vehicle struck the motorcycle that he was then operating. At the time of the accident, Annunziata was performing his duties as a police officer for the City of Erie (City). At the time of the injury, to supplement his police officer salary, Annunziata served as a part-time security guard for the Holiday Inn Downtown hotel (Holiday Inn) and a part-time automatic teller machine (ATM) maintenance person for Great Lakes Armored, Inc. (Great Lakes). By Notice of Compensation Payable (NCP) dated May 13, 1998, the City accepted its liability to Annunziata for workers' compensation benefits, but stated that the injured officer would continue to receive his full salary, pursuant to the Heart and Lung Act, "in lieu of [workers'] compensation" benefits. Reproduced Record (R.R.) at 2a.

The City continued to pay Annunziata his $777.81 full weekly salary for his police position. On August 5, 1998, the injury fully resolved and Annunziata returned to his pre-injury positions with the City, Holiday Inn, and Great Lakes. On November 4, 1999, Annunziata filed a Claim Petition, seeking workers' compensation benefits from the City for the loss of earnings from his employment with Holiday Inn and Great Lakes during the period of his disability, from April 22, 1998, through August 5, 1998. In support of his Claim Petition, Annunziata provided the City with a record of his wages earned at Holiday Inn and Great Lakes during the year immediately preceding his injury. The City revised the NCP to reflect these additional earnings pursuant to Section 309(e) of the Workers' Compensation Act, which provides that where an employee was "working under concurrent contracts with two or more employers, his wages from all such employers shall be considered as if earned from the employer liable for compensation." 77 P.S. 582(e). The City calculated Annunziatas pre-injury average weekly wage as $988.37, which included $210.56 per week for his jobs at Holiday Inn and Great

Lakes, and the $777.81 full weekly salary he received for his police position.[3] R.R. at 40a.

Pursuant to Section 105.2 of the Workers' Compensation Act, an average weekly wage of $988.37 would entitle a claimant to $561.00 in benefits. 77 P.S. 25.2 (statewide maximum in effect in 1998).[4] In its Answer to the Claim Petition, the City denied any obligation to pay workers' compensation benefits because the amount it was already paying Annunziata in Heart and Lung benefits ($777.81) exceeded the $561.00 he would have been entitled to as workers' compensation. The City relied on Section 1(a) of the Heart and Lung Act, which provides in relevant part as follows:

> During the time salary for temporary incapacity shall be paid by the Commonwealth of Pennsylvania or by the Delaware River Port Authority or by the county, city, borough, town or township, **any workmen's compensation,** received or collected by any such employe for such period, **shall be turned over to the** Commonwealth of Pennsylvania or to the Delaware River Port Authority or to such county, **city,** borough, town or township, and paid into the treasury thereof, and if such payment shall not be so made by the employe the amount so due the Commonwealth of Pennsylvania, the Delaware River Port Authority or the county, city, borough, town or township shall be deducted from any salary then or thereafter becoming due and owing.

53 P.S. 637(a) (emphasis added). The City contended that the receipt of Heart and Lung benefits forecloses the possibility of concurrent workers' compensation benefits.

The WCJ denied the Claim Petition, stating that where "the cause of disability is related to a work injury, the workers'

---

3. Annunziata alleges that his average weekly wage from his concurrent employment was $240.51. Brief of Annunziata at 2. Because the Workers' Compensation Judge (WCJ) denied the Claim Petition, it never calculated the average weekly wage Annunziata earned at his concurrent employment with Holiday Inn and Great Lakes.

4. Pennsylvania Department of Labor & Industry, *Statewide Average Weekly Wage,* http://www.dli.state.pa.us/landi/cwp/view.asp?a=138&Q=58516# 1998 (accessed September 11, 2003).

compensation benefit the injured employee is entitled to is reimbursed to the municipality for the period he received Heart and Lung benefits." Decision of the WCJ at 2. Because Annunziata was "better off than other injured employees who have [a similar] average weekly wage, [Annunziata] . . . is not entitled to partial worker's compensation benefits because of his loss in concurrent employment earnings in addition to his [full salary] Heart and Lung benefits." *Id.* at 3.

Annunziata appealed to the Workers' Compensation Appeal Board (WCAB), which reversed the determination of the WCJ. The WCAB concluded that wage loss benefits paid pursuant to the Worker's Compensation Act, as a result of concurrent employment, "are not subject to the reimbursement requirement of the Heart and Lung Act." Opinion of the WCAB at 5. The WCAB reasoned that "it would be inequitable to require the reimbursement of wage loss benefits arising from concurrent employment" as such "would deprive [Annunziata] of compensation for wages he would have earned had he not sustained a work-related injury." *Id.* at 6.

The Commonwealth Court affirmed the Order of the WCAB in a published Opinion. *City of Erie v. Workers' Compensation Appeal Board (Annunziata)*, 799 A.2d 946 (Pa.Cmwlth. 2002). The court noted that "the compensation programs and the employers' obligations under the two statutes are separate and conceptually different," thus implying that compensation pursuant to the Heart and Lung Act should not foreclose the collection of workers' compensation benefits. *Id.* at 951–952. The Commonwealth Court explained that the goal of workers' compensation is to "create a reasonable picture of a claimants pre-injury earning experience for use as a projection of potential future wages and, correspondingly, earnings loss." *Id.* at 952 (quoting *Triangle Building Center v. Workers' Compensation Appeal Board (Linch)*, 560 Pa. 540, 746 A.2d 1108, 1112 (2000)). The court held that the set-off provision in the Heart and Lung Act applies only where the employee seeks or receives workers' compensation benefits for the same employment for which he is receiving Heart and Lung benefits, not concurrent employment. The Commonwealth Court remand-

ed the matter to the WCAB with instructions for that tribunal to remand to the WCJ for a calculation of the amount of workers' compensation benefits for which Annunziata would be eligible.

## DISCUSSION

In this case, we are asked to define the parameters of the interrelation between the Heart and Lung Act and the Workers' Compensation Act. Specifically, we must resolve two issues: (1) whether an injured worker, who receives Heart and Lung benefits for his primary police employment, can also receive workers' compensation benefits for concurrent employment; and (2) if yes, whether the employee can retain those benefits, or whether the employee must forward that money to his employer pursuant to the subrogation/reimbursement provision of the Heart and Lung Act. As a foundational matter, a brief discussion of the two acts and their purposes is in order.

As we have described, "[t]he Workers' Compensation Act is remedial legislation designed to compensate claimants for earnings loss occasioned by work-related injuries." *Triangle Building Center*, 746 A.2d at 1111. The statute seeks "to provide recompense commensurate with the damage from accidental injury, as a fair exchange for relinquishing every other right of action against the employer." *Rudy v. McCloskey Co.*, 348 Pa. 401, 35 A.2d 250, 253 (1944) (citing *Blake v. Wilson*, 268 Pa. 469, 112 A. 126 (1920)). *Accord Vescio v. Pennsylvania Electric Co.*, 336 Pa. 502, 9 A.2d 546, 549 (1939) (the purpose of the Workers' Compensation Act is "to substitute a method of accident insurance in place of common-law rights and liabilities for ... all employees" covered by its provisions). The goal of the workers' compensation legislative scheme is to relieve the employee "from the economic consequences of his injury and make [those consequences] a part of the cost of operation of the business, to be paid ultimately by the consuming public...." *Rudy*, 35 A.2d at 253. It is well settled that, "[i]n construing the Act, we are mindful that, being remedial in nature and intended to benefit the Pennsylvania worker, the Act must be liberally construed to effectuate

its humanitarian objectives." *Krawchuk v. Philadelphia Electric Co.,* 497 Pa. 115, 439 A.2d 627, 630 (1981). *See LTV Steel Co., Inc. v. Workers' Compensation Appeal Board (Mozena),* 562 Pa.205, 754 A.2d 666, 674 (2000) (holding that "[c]ourts should liberally construe the Act in favor of the claimant"); *Pater v. Superior Steel Co.,* 263 Pa. 244, 106 A. 202, 202 (1919).

Where an employee is totally disabled, meaning that the injury results in a total loss of earning power for a period of time, he or she is entitled to receive benefits amounting to sixty-six and two-thirds percent of his or her average weekly wage.[5] 77 P.S. § 511(1). The legislature justified this substantial, percentage-based reduction of average weekly pay as an amelioration of potential unfairness to employers. *Triangle Building Center,* 746 A.2d at 1112. Where, immediately prior to the injury, the employee worked more than one job for more than one employer, the Workers' Compensation Act ensures that he or she will be compensated for that position as well. 77 P.S. § 582(e). *See Triangle Building Center,* 746 A.2d at 1112 ("the General Assembly directed inclusion of concurrent wages in the benefits computation . . . to create a reasonable picture of a claimant's pre-injury earning experience for use as a projection of potential future wages and, correspondingly, earnings loss").

In contrast, "[t]he Heart and Lung Act covers specified public employees engaged primarily in police work, firefighting, or other jobs involving public safety. The Act was created to ensure that, if these employees were injured or otherwise disabled in the course of carrying out their hazardous duties, they would be guaranteed continued **full income** until their return to duty." *Cunningham v. Pennsylvania State Police,* 510 Pa. 74, 507 A.2d 40, 43 (1986) (emphasis added).[6] "[T]he best interest of the municipality and not the

---

5. The term "wage" includes salary, reported gratuities, bonuses, incentives, and vacation pay. 77 P.S. § 582(e).

6. As we described in *Camaione v. Borough of Latrobe,* 523 Pa. 363, 567 A.2d 638 (1989), "[c]ompensation for total disability is not permitted under the statute and has not been allowed by this Court." *Id.* at 640 (citing *Creighan v. City of Pittsburgh,* 389 Pa. 569, 132 A.2d 867 (1957)).

disabled officer was the prime consideration prompting its enactment. Efficient firemen and police officers must take chances; the performance of their duties are hazardous. The prospect of uninterrupted income during periods of disability well may attract qualified persons to these vocations...." *Kurtz*, 133 A.2d at 177 (quoting *Iben v. Borough of Monaca*, 158 Pa.Super. 46, 43 A.2d 425, 427 (1945)). *See also* 63 Corpus Juris Secundum Municipal Corporations 578 (citing *Iben* with approval).

The amount of compensation that the Heart and Lung Act provides is the "full rate of salary," 53 P.S. 637(a), which, unlike "wages" contemplated by the Workers' Compensation Act, does not include vacations and overtime. *Horner v. Borough of California*, 698 A.2d 1360 (Pa.Cmwlth.1997); *Schmidt v. Borough of Stroudsburg*, 670 A.2d 208 (Pa.Cmwlth. 1996), *affirmed per curiam*, 547 Pa. 159, 689 A.2d 223 (1997). "[A]lthough the [Heart and Lung] Act grants full compensation and continuation of employee benefits to eligible employees, and thus in one sense is more generous towards injured employees than the Workers' Compensation Act, its scope is in fact much narrower." *Allen v. Pennsylvania State Police*, 678 A.2d 436, 438 (Pa.Cmwlth.1996), petition for allowance of appeal denied, 546 Pa. 696, 687 A.2d 379 (1997). The Heart and Lung Act makes no mention of concurrent employment.

█ Another significant distinction between the Heart and Lung Act and the Workers' Compensation Act is that the Heart and Lung Act is to be strictly construed. 1 Pa.C.S. 1928(b)(8) provides that "[p]rovisions enacted finally prior to September 1, 1937 which are in derogation of the common law ... shall be strictly construed...." The Heart and Lung Act was enacted in 1935 and varies the common law in that it

The Heart and Lung Act provides benefits only for temporary disability. *Camaione*, 567 A.2d at 640; *Kurtz v. City of Erie*, 389 Pa. 557, 133 A.2d 172, 177 (1957) ("[w]hile the Act provides for compensation for total disability for a temporary period, it excludes compensation for any disability which is permanent"). *Accord Griffin v. Pennsylvania Board of Probation and Parole*, 756 A.2d 1203, 1208 (Pa.Cmwlth.2000); *Colyer v. Pennsylvania State Police*, 165 Pa.Cmwlth. 41, 644 A.2d 230, 233 (1994).

imposes a liability on employers, whether or not they are at fault for the injuries of their employees. *See Organ v. Pennsylvania State Police,* 112 Pa.Cmwlth. 352, 535 A.2d 713, 714 n. 5 (1988). *See also Justice v. Department of Public Welfare,* 829 A.2d 415, 416 (Pa.Cmwlth.2003); *Hollenbush v. Department of Corrections,* 736 A.2d 48, 50 (Pa.Cmwlth.1999); *Donnini v. Pennsylvania State Police,* 707 A.2d 591, 593 (Pa. Cmwlth.1998); *McCommons v. Pennsylvania State Police,* 165 Pa.Cmwlth. 280, 645 A.2d 333, 335 (1994), petition for allowance of appeal denied, 539 Pa. 671, 652 A.2d 841 (1994); *Colyer,* 644 A.2d at 233. This operates in stark contradistinction to the liberal, pro-employee construction afforded the provisions of the Workers' Compensation Act. *LTV Steel,* 754 A.2d at 674.

■ It is within this framework that we examine the ability of an injured employee, who is entitled to and receiving Heart and Lung Act benefits, to seek workers' compensation for concurrent employment. The City contends that, by using the terms "any" and "shall" in section 1(a) of the Heart and Lung Act when referring to the requirement that an injured employee turn over workers' compensation benefits received to the entity paying Heart and Lung benefits, the General Assembly expressed a clear intent to deprive such an employee of the right to seek workers' compensation benefits. Moreover, the City argues, by providing an increased benefit to those covered by the Heart and Lung Act, the General Assembly already has rewarded individuals, such as Annunziata, for the necessary and sometimes dangerous public functions they perform. The City avers that the Heart and Lung Act, by its clear language, prohibits collection from a collateral source for the same work injury, irrespective of whether the funds the injured worker seeks from the collateral source are for concurrent employment.

■ We cannot accept this argument. The unambiguous language of Section 1(a) of the Heart and Lung Act, to which the City so often refers, clearly contemplates the ability of an injured employee to seek workers' compensation. That sec-

tion provides that any workmen's compensation **received or collected** by [the employee for the period of injury] shall be **turned over** .... 53 P.S. 637(a) (emphasis added). *See* 1 Pa.C.S.1921(b) ("[w]hen the words of a statute are clear and free from all ambiguity, the letter of it is not to be disregarded under the pretext of pursuing its spirit"). This language does not estop an injured employee from **seeking** workers' compensation, only from **retaining** monies collected pursuant to a workers' compensation Claim Petition. While the effect of this dichotomy may ultimately be rendered hollow by the set-off, as discussed below, nonetheless the Heart and Lung Act does not relieve the employer from its "continuing obligations to pay workers' compensation benefits for the work injury. ..." *City of Erie*, 799 A.2d at 952. Likewise, nothing in the Workers' Compensation Act eliminates the responsibility of an employer to pay workers' compensation to an injured employee who is receiving Heart and Lung benefits. We agree with the Commonwealth Court that the employers obligation to pay Heart and Lung benefits "is **concurrent with,** not in lieu of, its obligation" pursuant to the workers' compensation scheme. *Id.* (emphasis in original).[7]

Alternatively, the City avers that because Annunziata received $777.81 in Heart and Lung benefits, he is not entitled to receipt of workers' compensation because his average weekly wage, including concurrent employment, of $988.37, would entitle him to only $561.00 in workers' compensation benefits. However, this argument assumes that the interplay between the Heart and Lung Act and the Workers' Compensation Act allows an injured employee to choose only which set of benefits he desires. There is no authority for such a constraint in either enactment, as the Workers' Compensation Act does not make any mention of the Heart and Lung Act and, as we have held above, the Heart and Lung Act does not take the place of

7. Nevertheless, in circumstances where the employer is self-insured, it would be an exercise in futility to mandate that the employer pay benefits to the claimant and then require the claimant to turn around and remit them back to the employer. To avoid this absurdity, in such a situation, it would be proper for the employer to issue a revised NCP and refuse to pay benefits.

workers' compensation, but functions instead concurrent therewith, where the injured employee is entitled to Heart and Lung benefits.[8]

However, it does not necessarily follow from our affirmance of the right of a claimant to **seek and receive** workers' compensation benefits for concurrent employment that a claimant can **retain** those benefits. The clear language of Section 1(a) provides that "**any** workmen's compensation benefits received or collected . . . **shall be turned over.**" 53 P.S. 637(a) (emphasis added). Annunziata advocates, and the Commonwealth Court adopted, an equitable exception to this seemingly mandatory language:

> To construe the term "any" workers' compensation in Section 1(a) to include benefits for loss of earnings from the concurrent employment and require the claimant to reimburse such benefits to the employer would result in ignoring the mandate of Section 309(e) of the Workers' Compensation Act that the wages from the concurrent employment be included in computing wage loss benefits. Under such construction of Section 1(a), the claimant would be inequitably deprived of the compensation for wages that would have been earned had he or she not sustained the work injury while performing the duties of the primary employment.

*City of Erie*, 799 A.2d at 953. Because injured workers' who are not covered by the Heart and Lung Act can recover workers' compensation benefits for primary and concurrent employment, Annunziata reasons that he should be able to recover over and above his Heart and Lung benefits for his concurrent employment. In making this argument, Annunzia-

8. This should not be read to imply that an injured employee can, in good faith, seek workers' compensation benefits for the same job that gives rise to Heart and Lung benefits. That possibility has been foreclosed by the Commonwealth Court, *see Wisniewski v. Workmen's Compensation Appeal Board (City of Pittsburgh)*, 153 Pa.Cmwlth.403, 621 A.2d 1111, 1113 (1993), and *Tyson v. Workmen's Compensation Appeal Board*, 67 Pa.Cmwlth. 213, 446 A.2d 733, 734 735 (1982), and is beyond the scope of our grant of the Petition for Allowance of Appeal in the instant case. *City of Erie v. Workers' Compensation Appeal Board (Annunziata)*, 572 Pa.693, 819 A.2d 1191 (2003).

ta glosses over the fact that the benefits provided by the Heart and Lung Act are far more generous than those provided by workers' compensation. If Annunziata had worked for a private employer instead of the City, at the same salary, and also held his positions at Holiday Inn and Great Lakes, he would still be entitled to only $561.00 in workers' compensation benefits.[9] Ultimately, though, this equitable argument falls at the knees of the rules of statutory construction.

In light of the legislative directive that we construe the Heart and Lung Act strictly pursuant to 1 Pa.C.S.1928(b)(8), we cannot see "**any**" way around the word any. The Heart and Lung Act explicitly requires an injured employee, such as Annunziata, who is receiving or has received Heart and Lung benefits, to turn over to the employer who continues to pay the employee his full salary during his temporary disability, **all** workers' compensation attributable to that period. While it is apparent that the General Assembly in drafting the Heart and Lung Act did not consider the effect of concurrent employment on the rights of the enumerated professionals to collect benefits, and the amounts thereof, it is not within the province of this Court to attempt to presume how the legislature would have spoken in the face of clear language.

We are not unmindful of the harshness of this result. We recognize that the community directly affected by the disposition of this case is comprised of individuals whom we ask, on a daily basis, to perform some of the most hazardous duties in our society, made evermore perilous in this post–9/11 era. Unfortunately, the compensation that firefighters and police officers earn is not commensurate with the importance of their jobs in our society and the dangers they encounter. Therefore, it is understandable that these individuals will seek concurrent employment to supplement their salaries. It is neither our goal nor our intention to approve of a legislative landscape that wholly fails to take this into account. Howev-

9. It is theoretically possible that a situation could arise where an injured worker would receive more in workers' compensation than that to which he or she would be entitled as Heart and Lung Act benefits. However, this is not that case.

er, where, as here, the language of a statute is clear, our hands are tied, and it is for the General Assembly to ameliorate this inequity, if it so chooses.

## CONCLUSION

In accordance with the foregoing discussion, we affirm in part and vacate in part the Order of the Commonwealth Court. Annunziata is entitled to seek workers' compensation for his concurrent employment, but Section 1(a) of the Heart and Lung Act, 53 P.S. § 637(a), requires him to reimburse any benefits so received to his employer, the City. This Court is bound to apply the plain language of a statute, even if we would have drafted the statute differently or believe that the statute is bad public policy. It is up to the legislature, not this Court, to examine the perceived inequity and take appropriate action. Therefore, we reverse the portion of the Order of the Commonwealth Court that would have allowed Annunziata to retain workers' compensation benefits he could collect for his concurrent employment and, accordingly, we vacate that part of the Order of the Commonwealth Court that remanded the matter for a calculation of benefits. Because the City is self-insured for workers' compensation purposes, rather than mandating the City to pay benefits to Annunziata and then requiring Annunziata to turn around and remit them, as a matter of policy, it was proper for the City to issue a revised NCP and refuse to pay benefits.

Chief Justice CAPPY files a concurring and dissenting opinion in which Justice LAMB joins.

Chief Justice CAPPY concurring and dissenting.

I join the majority's analysis and conclusion that a police officer, who suffers an injury in the course of his duties, may collect benefits pursuant to the Workers' Compensation Act in addition to Heart and Lung Act compensation. I dissent, however, from the majority's analysis and conclusion that police officers cannot retain workers' compensation benefits received for the loss of earning from concurrent employment. Rather, I believe that the mandates contained in the Statutory

Construction Act lead to the opposite conclusion and that police officers may retain those workers' compensation benefits.

The Heart and Lung Act provides in relevant part that: "During the time salary for temporary incapacity shall be paid by the ... city ... any workmen's compensation, received or collected by any such employe for such period, shall be turned over to the ... city...." 53 P.S. § 637(a). Based on this portion of Section 637(a), the majority determines that the "clear language" contained in the statute requires that police officers turn over all workers' compensation benefits—even those received for the loss of earning from concurrent employment, such as in this case, benefits received by Officer Annunziata for his loss of earning from his employment as a guard and maintenance worker.

This approach treats those police officers whose only employment is service as an officer in exactly the same way it treats those police officers who work one or more additional non-service related jobs to make ends meet. By treating these police officers the same, regardless of their different employment situation, the majority's approach fails to give effect to the Workers' Compensation Act by depriving police officers who work multiple non-service jobs of any benefits for the loss of earnings from their concurrent employment.

As its opinion shows, the majority is not unaware of or uncaring of this result. Indeed, the majority readily acknowledges that "it is apparent that the General Assembly in drafting the Heart and Lung Act did not consider the effect of concurrent employment" and that it is "not unmindful of the harshness of this result," yet the majority laments that "we cannot see any way around the word 'any'," Majority Opinion, 575 Pa. at p. 607, 838 A.2d at p. 606 and that "our hands are tied." Majority Opinion, 575 Pa. at p. 608, 838 A.2d at p. 606.

The Statutory Construction Act, however, provides relief for the majority's understandable concern and for the "harshness" faced by police officers working multiple jobs. Specifically, 1 Pa.C.S. § 1932(a) states that "[s]tatutes or parts of statutes

are in pari materia when they relate to the same persons or things or to the same class of persons or things." In fact, 1 Pa.C.S. § 1932(b) mandates that "[s]tatutes in pari materia shall be construed together, if possible, as one statute." *See Kelly v. City of Philadelphia*, 382 Pa. 459, 115 A.2d 238, 245 (1955) (statutes in pari materia should be construed concurrently whenever possible and if they can be made to stand together, effect should be given to both as far as possible); *see also Lewis v. Erie Ins. Exchange*, 568 Pa. 105, 793 A.2d 143, 149 (2002); *Hamilton v. Unionville–Chadds Ford School District*, 552 Pa. 245, 714 A.2d 1012, 1015 (1998).

Here, both the Heart and Lung Act and the Workers' Compensation Act relate not only to the same person, but also to the same thing—compensation for a work-related injury. Thus, the two statutes are in pari materia. Moreover, the Legislature clearly intended the two statutes to be construed together in a consistent fashion by the fact that the Heart and Lung Act, by its terms, specifically recognizes a police officer's concurrent receipt of benefits under the Workers' Compensation Act.

Thus, pursuant to the Statutory Construction Act, this Court is mandated to construe the statutes together and to give effect to both of these statutory enactments, if possible. The majority, however, fails to do so. Giving effect to the two statutes is clearly possible in the situation regarding concurrent employment. Indeed, without so stating, the Commonwealth Court did just this in construing the Heart and Lung Act.

Specifically, the Commonwealth Court's approach requiring officers to return workers' compensation benefits received for police employment to the employer, but allowing officers to retain benefits received for loss of concurrent employment, gives effect to both statutes, is consistent with the policies underlying both statutes, and is eminently fair. It gives no windfall to police officers and yet takes into account any concurrent employment and recognizes the loss in earning power regarding the other non-service related employment due to the injury occurring while on duty as a police officer.

For these reasons, I concur in and dissent from the majority's decision today and would affirm the Commonwealth Court.

Justice LAMB joins this concurring and dissenting opinion.